Eddie E. WYATT, Jr. *v.* STATE of Arkansas

CA CR 00-1117                                    54 S.W.3d 549

Court of Appeals of Arkansas
Division I
Opinion delivered August 29, 2001
[Petition for rehearing denied October 10, 2001.]

*Montgomery, Adams & Wyatt, PLC*, by: *Dale E. Adams*, for appellant.

*Mark Pryor*, Att'y Gen., by: *Kent G. Holt*, Ass't Att'y Gen., for appellee.

JOSEPHINE LINKER HART, Judge. Having been convicted of the crimes of manufacturing methamphetamine, possession of drug paraphernalia, second-degree endangering the welfare of a minor, and possession of marijuana, appellant, Eddie E. Wyatt, Jr., was sentenced to a total of forty-five years' imprisonment in the Arkansas Department of Correction. On appeal, he argues that the circuit court erred in refusing to suppress evidence seized during the search of the home where appellant resided because the affidavit supporting the search warrant included material misstatements of fact regarding the reliability of a confidential informant. Also, he argues that he should not have been sentenced for both the offense of possession of drug paraphernalia and the offense of manufacture of a controlled substance because the former is a lesser offense included in the latter. We affirm on the first point after reaching the merits. However, because the record is deficient, we are unable to reach the merits of the second point, and we affirm on this point as well.

The affidavit for the search warrant, dated June 9, 1999, and signed by Ken Whillock of the Arkansas State Police and by Afton Fletcher of the Fourteenth Judicial District Drug Task Force, provided that the officers had reason to believe that both methamphetamine and items used in the manufacture and consumption of methamphetamine were being concealed at the residence of Connie Ward. In support of their belief, the affiants stated that on May 2, 1999, as police approached the Ward residence, appellant fled. After appellant's capture, a box containing a methamphetamine laboratory was found in the edge of the woods on the Ward property. The affiants further noted that on May 19, 1999, an officer received a signed statement from Carol Lackey, who stated that Ward had told her that appellant had a methamphetamine laboratory behind her house. Lackey further stated that Ward told her that she and appellant had purchased pills and anhydrous ammonia for the purpose of making methamphetamine.

The affiants then noted that on June 9, 1999, at approximately 3:15 p.m., a "cooperating individual" working under the supervision of law enforcement authorities went to the Ward residence to set up a methamphetamine purchase from appellant. The confidential informant reported that he believed that appellant was manufacturing methamphetamine in the back bedroom of the residence, noting that appellant kept entering the back bedroom, on one occasion carrying a bowl of ice cubes into the room and exiting with an empty bowl. The confidential informant also noted a

strong, "fumy-type," chemical odor that burned his eyes and nose. When he asked appellant if he could obtain some methamphetamine, appellant told him that it was not ready, but that "when it is, it's gonna have legs," meaning that it would be very good. At 5:45 p.m., the confidential informant called appellant at Ward's residence, and appellant stated, "It's not finished, but I'm working on it. When it's done, I'll bring it to you." The affiants noted that a strong, "fumy," chemical smell is consistent with a methamphetamine laboratory and that ice is often used in the manufacturing process to control certain stages of the reaction. The affiants further stated that appellant was a convicted felon out on bond for manufacturing methamphetamine and that he had "numerous drug violations."

The affiants also stated as follows:

Reliability of said informant, has been established by:

This cooperating individual has provided Affiants with reliable information regarding illegal drug dealers, in Van Buren County, this information has proved to be accurate, in that numerous controlled drug buys have been made from these dealers. Arrests based on these drug buys, and information, are pending.

Based on the affidavit, a search warrant was issued on June 9, 1999, at 7:05 p.m., and was served approximately thirty minutes later.

At the hearing on the motion to suppress, however, Whillock testified that the informant had made only one buy for him and several buys for another narcotics officer. No arrest or conviction had occurred in his case, and he did not know if any arrests or convictions had followed the other buys. Whillock further testified that he was not sure who the other officer was and that of his "own personal knowledge," he did not know if the informant had made any buys or sales for anyone else. Fletcher testified that he knew that the informant had made several controlled buys for two particular officers, and he checked with the officers to determine the reliability of the individual. He further testified that the individual had made a buy for him, Whillock, and another officer on June 2 for what was purported to be methamphetamine.

At the hearing on the motion to suppress, both appellant's counsel and counsel for appellant's codefendants argued that the affidavit contained false or misleading information because it provided that the informant had "provided Affiants with reliable information regarding illegal drug dealers" while both affiants testified that the individual had assisted them in only one buy. They argued

that if the misleading information is disregarded, the remaining portions of the affidavit were insufficient to establish probable cause to issue a search warrant. The judge denied appellant's motion to suppress, stating that while he agreed that the affidavit could have been worded more clearly, he did not find this to be a fatal flaw. The judge concluded that the affidavit still provided probable cause to issue a search warrant, noting particularly that "there had been recovered a drug lab before," that "statements had been made about the drug lab," and that appellant told the informant that methamphetamine was being cooked and the informant smelled chemicals.

On appeal, appellant argues that the "veracity of the confidential informant was attempted to be made on the basis of false statements that the informant had made numerous controlled buys from other drug dealers and supplied information of such on many occasions, when in reality one of the affiants had used the informant but once before this. . . ." He argues that statements made by the confidential informant should be stricken, and he further argues that without these statements, the affidavit does not supply reasonable cause to support the issuance of a search warrant.

Appellant's argument requires that we examine the holding of *Franks v. Delaware*, 438 U.S. 154 (1978). There, the United States Supreme Court concluded that if a defendant shows by a preponderance of the evidence that the affidavit contained a false statement by the affiant that was made knowingly and intentionally or with reckless disregard for the truth, then the false material is excised, and if the remaining content does not establish probable cause to support a search warrant, then the search warrant must be voided and the fruits of the search suppressed. *Franks*, 438 U.S. at 155-56.

We note that appellant argues that the statements made by the confidential informant should be stricken in their entirety. However, contrary to appellant's argument, we conclude that even if the first prong of the *Franks* test has been met and that the statement regarding the reliability of the informant should be excised, the affiants' statement regarding what they were told by the informant would still be considered, as there is no evidence suggesting that the officers were untruthful in reporting what they were told by the informant.

As concluded by the trial court, the affidavit could have been written more clearly. Nevertheless, as found by the court, even if we do not consider the affiants' statements regarding the reliability of the confidential informant, probable cause supported the issuance of the search warrant. The United States Supreme Court has stated as follows:

The task of the issuing magistrate is simply to make a practical, common-sense decision whether, given all the circumstances set forth in the affidavit before him, including the "veracity" and "basis of knowledge" of persons supplying hearsay information, there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a "substantial basis for . . . conclud[ing]" that probable cause existed.

*Illinois v. Gates*, 462 U.S. 213, 238-39 (1983)(citations omitted). Furthermore, a deficiency in the informant's "veracity" or "reliability" and his "basis of knowledge" "may be compensated for, in determining the overall reliability of a tip, by a strong showing as to the other, or by some other indicia of reliability." *Gates*, 462 U.S. at 233. For instance, "even if we entertain some doubt as to an informant's motives, his explicit and detailed description of alleged wrongdoing, along with a statement that the event was observed first-hand, entitles his tip to greater weight than might otherwise be the case." *Gates*, 462 U.S. at 234.

■ Here, the informant provided an explicit and detailed first-hand account of the events of June 9, describing both the strong chemical odor and how appellant carried a bowl of ice cubes into a back bedroom and exited with an empty bowl. The informant also noted appellant's remarks to him regarding his manufacture of methamphetamine. Corroborating this account is appellant's flight from the residence as the police approached on May 2, 1999, and the signed statement of Carol Lackey from May 19, 1999, who stated that Ward had told her appellant had a methamphetamine laboratory behind her house and that Ward and appellant had purchased pills and anhydrous ammonia for the purpose of making methamphetamine. As set forth in *Gates*, given all the circumstances set forth in the affidavit before him, the issuing judge had a substantial basis for concluding that probable cause existed to support issuance of the search warrant.

In addition to other crimes, according to the judgment and commitment order appellant was sentenced for both the crime of manufacturing methamphetamine as a Class Y felony and the crime of possession of drug paraphernalia with the intent to manufacture as a Class B felony. At the sentencing hearing, appellant's counsel (who was not the same as appellant's counsel at trial) argued that appellant should not be sentenced for committing the crime of possession of drug paraphernalia with the intent to manufacture because that crime is a lesser-included offense of the crime of manufacturing metamphetamine. In denying appellant's motion, the court noted that appellant also had in his possession a number of

items, including needles, scales, spoons, and corners of baggies, that were "not necessarily required" to manufacture methamphetamine, and that as such, the crime constituted a separate offense.

"[I]t is unlawful for any person to manufacture, deliver, or possess with intent to manufacture or deliver a controlled substance." Ark. Code Ann. § 5-64-401(a) (Supp. 1999). Also, "[i]t is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to manufacture methamphetamine in violation of this chapter." Ark. Code Ann. § 5-64-403(c)(5) (Supp. 1999). Commission of this latter offense is a Class B felony. *Id.* Further, "[i]t is unlawful for any person to use, or to possess with intent to use, drug paraphernalia to plant, propagate, cultivate, grow, harvest, manufacture, compound, convert, produce, process, prepare, test, analyze, pack, repack, store, contain, conceal, inject, ingest, inhale, or otherwise introduce into the human body a controlled substance," and doing so constitutes a Class C felony. Ark. Code Ann. § 5-64-403(c)(1) (Supp. 1999).

A person may not be convicted of more than one offense if "[o]ne offense is included in the other. . . ." Ark. Code Ann. § 5-1-110(a)(1) (Repl. 1997). An offense is included in another offense if "[i]t is established by proof of the same or less than all the elements required to establish the commission of the offense charged. . . ." Ark. Code Ann. § 5-1-110(b)(1) (Repl. 1997). Appellant argues on appeal that "[b]ecause the appellant could not have committed the offense of manufacture without also possessing drug paraphernalia used in the manufacture of that controlled substance, possession of drug paraphernalia used in manufacturing the drug is necessarily included in the offense of manufacturing here and cannot stand pursuant to [section] 5-1-110(a)(1)."

We are, however, unable to address appellant's argument because it is not clear from the record whether he was convicted of violating section 5-64-403(c)(1) or section 5-64-403(c)(5). We note that the information contained in the record is ambiguous, as is the unabstracted verdict form. Both note that appellant was charged with a Class B felony, which would suggest that he was charged with violating section 5-64-403(c)(5), but the language contained in each suggests that appellant was charged with violating section 5-64-403(c)(1). We also note that the unabstracted prosecutor's affidavit clearly refers to section 5-64-403(c)(1). While the judgment and commitment order notes that appellant was convicted of a Class B felony and that he was convicted of "[p]ossession of [d]rug [p]araphernalia w/intent to manufacture," that order does not specify which particular subsection of the statute appellant violated. Without knowing which subsection of the statute he was convicted

of violating, it is impossible to determine whether the crime was a lesser–included offense. It is appellant's duty to provide a record demonstrating that reversible error occurred. *See, e.g., McGhee v. State*, 330 Ark. 38, 42, 954 S.W.2d 206, 208 (1997). Consequently, we affirm on this point. We also note that appellant argues that the crimes constitute a "continuing course of conduct." *See* Ark. Code Ann. § 5-1-110(a)(5) (Repl. 1997). This specific issue was not raised below, and because we will not consider issues raised for the first time on appeal, we affirm this portion of his argument for this reason as well. *See Brown v. State*, 74 Ark. App. 281, 286, 47 S.W.3d 314, 319 (2001).

Affirmed.

NEAL and VAUGHT, JJ., agree.